IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY JAMES McGRATH,

                Plaintiff,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

           Defendant.

Case NO. 11 C 2125

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy McGrath asks this Court to reverse or remand the Commissioner of Social Security's conclusion that he is not disabled. For the reasons stated herein, the Motion to Remand for Reconsideration is granted.

### I. STATEMENT OF FACTS

Prior to his foot surgery in 1999, Timothy McGrath ("McGrath") worked in the U.S. Army and at various times as a welder and fitter, and a manager. Following complications from this surgery, he has been diagnosed and/or treated for: Complex Regional Pain Syndrome ("CRPS") Type II and cellulitis. Many years prior to his foot surgery, he was also diagnosed with photophobia. The last date on which he was insured for disability (his "DLI") was December 31,

2006.  The question here is whether he was legally disabled on or before that date.

The Court summarizes McGrath's treatment history at some depth. He had corrective foot surgery on October 4, 1999.  After a reaction to a metallic wire implant resulted in complications from this surgery, he was diagnosed with Complex Regional Pain Syndrome ("CRPS") Type II and cellulitis.  McGrath's wife testified he returned to work and worked short years in both 2000 and 2001, last working in February or March 2001.  She testified that he stopped working because of severe foot pain and large, painful tumors on his right leg.  His wife further testified that he underwent two unsuccessful procedures to attempt to remove these tumors.  Mrs. McGrath testified that Dr. Morris instructed Mr. McGrath not to undergo any more surgeries on his foot or leg due to his sensitivity to metal.

Mr. McGrath began seeing Dr. Morales at the pain clinic from June 2000 to April 2005.  Dr. Morales' treatment notes in all consultations from June 2000 until April 2005 reveal that McGrath's pain symptoms from CRPS Type II were well controlled through the prescription of the narcotic painkiller Vicodin.  In his June 2000 consultation, Dr. Morales noted that McGrath denied side effects and was happy with his treatment of one Vicodin ES tablet three times per

day. In his January 2001 and December 2001 consultations, Dr. Morales noted that McGrath was working. In December 2001, Dr. Morales noted that McGrath could walk without problems. In May 2003 and November 2004 Dr. Morales noted that McGrath's medication regimen allowed him to work. In the November 2004 consultation, Dr. Morales further noted that McGrath was able to do his work without any problems.

McGrath suffered a stroke in mid to late 2007, and he has been disabled since that time. However, because the claimant was last insured for Title II benefits only through December 21, 2006, McGrath must establish disability on or prior to that date in order to be entitled to a period of disability and disability insurance benefits.

McGrath filed for Social Security Title II disability and disability insurance benefits on March 15, 2008 claiming an onset date of November 1, 2000. McGrath's claim for disability benefits was denied on May 20, 2008, and upon reconsideration on June 25, 2008. The State agency medical consultants who reviewed the record concluded that there was insufficient evidence of any severe impairment prior to McGrath's last date insured. He requested an administrative hearing on July 21, 2008 and received one on June 4, 2009.

On September 15, 2009, Administrative Law Judge Shirley Michaelson (the "ALJ") ruled that McGrath was not disabled because McGrath had the residual functional capacity for the full range of light work to have performed jobs that existed in significant numbers in the national economy. The ALJ discussed evidence from three physicians: Dr. Easley, Dr. Morales, and Dr. Ezike (the impartial medical expert present at the hearing).

The ALJ did not discuss the records of Dr. Walters (the foot surgeon), which were not available at the hearing, as noted by the ALJ and Mrs. McGrath in the hearing testimony and questioning. The ALJ did not examine the records of Dr. Jiotis, Dr. Martini, Dr. Kao, and Dr. Harris, and prescription records for 2006. These records were not provided to the ALJ by the claimant in time for her consideration.

On February 8, 2011 the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final word of the Social Security Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011).

## II.  <u>LEGAL STANDARD</u>

The ALJ had to determine whether one or more determinable mental or physical impairments (that can be expected to last for 12 or more months) prevented Plaintiff from engaging in substantial gainful

activity.  To do so, she followed the five-step analysis in 20 C.F.R. §404.1520(a)(4).  If a claimant is found "not disabled" at any step, the inquiry ends and the claim is denied.

- At step one, a claimant is not disabled if he is currently performing substantial gainful activity.

- At step two, a claimant is not disabled unless he has a "severe" medical impairment.

- At step three, a claimant is disabled if his impairments meet or equal the listings at 20 C.F.R. Part 404, Subpart P, App. 1.  If they do not, the analysis continues.

- Before step four, the ALJ determines a claimant's Residual Functional Capacity ("RFC"); that is, what work he can do despite his limits. 20 C.F.R. §404.1545(a).  At this stage, the ALJ considers all record evidence and all of the claimant's impairments, severe or not. *Id.*

- At step four, a claimant is not disabled if he has the RFC to perform his past work.

- At step five, a claimant is not disabled if he can do any work in the national economy based on his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1512(g).

An ALJ must consider all relevant evidence and may not "cherry-pick" only facts that indicate non-disability; however, she need not discuss every piece of evidence.  *Goble v. Astrue*, 385 Fed.Appx. 588, 593 (7th Cir. 2010).  That is, the ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *McKinzey*, 641 F.3d at 889.

A treating physician's opinion is entitled to controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If an ALJ discounts a treating physician's opinion, she must offer good reasons why and specify how much weight she gives it in light of certain factors. *Id.* at 306, 308. Those factors include "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Id.* at 308. *See also*, 20 C.F.R. § 404.1527(d)(2).

On review, an ALJ's decision controls if it applies the correct legal standard and is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Campbell*, 627 F.3d at 306. The Court critically reviews the evidence, but does not reweigh it, resolve conflicts, or substitute its own judgment for the Commissioner's. *McKinzey*, 641 F.3d at 889. Because the Court reviews only a cold record, an ALJ's credibility findings receive special deference. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2011). Finally, review is limited to the ALJ opinion's stated rationale. *Campbell*, 627 F.3d at 306.

Remand for consideration of additional evidence is appropriate only upon a showing that the evidence is new and material to the claimant's condition during the relevant time period encompassed by the disability application under review, and there is good cause for not introducing the evidence during the administrative proceedings. *Sears v. Bowen*, 840 F.2d 394 (7th Cir. 1988) (citing 42 U.S.C. § 405(g)).

Additional evidence is new when it was not in existence at the time of the administrative proceedings and it is neither cumulative nor irrelevant. *Id.* (citing *Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136 (1st. Cir. 1987)). Additional evidence is material if there is a reasonable possibility that it would have changed the outcome of the Secretary's determination. *Sears v. Bowen*, 840 F.2d 394, 1380 (7th Cir. 1988). The materiality of additional evidence is not considered where claimant has not demonstrated good cause for not having offered the evidence in a prior proceeding. *Waite v. Bowen*, 819 F.2d 1356, 1361 (7th Cir. 1987).

In determining whether there is good cause for the failure to incorporate additional evidence into the record at a prior proceeding, the court looks to several factors: at what time the additional evidence was available; whether the record shows that the

additional evidence derives from an expert retained solely for the purpose of establishing a disability; whether the claimant is uninformed in procedural matters; whether the claimant was represented by lay advocates in combination with a medical history that causes claimant to rely upon others to read and explain letters and notices; whether the Appeals Council found good cause pursuant to its regulations to grant claimant an extension of time to file his appeal. Where the reasons for pursuing additional evidence are apparent while the case is still subject to administrative review, and there is no impediment to obtaining the evidence, no good cause has been demonstrated for failing to bring the evidence to the Secretary's attention. *Anderson v. Bowen*, 868 F.2d 921 (7th Cir. 1989).

### III. <u>ANALYSIS</u>

At step one of her decision, the ALJ concluded that McGrath did not engage in substantial gainful activity between November 1, 2000 and December 31, 2006. At step two, she found foot pain, a severe impairment. She noted that the condition caused "more than minimal functional limitations in the claimant's ability to perform basic work activity." In doing so, she found McGrath's other impairments, Chronic Obstructive Pulmonary Disease ("COPD"), hypertension, migraine headaches and photophobia not to be severe impairments. At

step three, the ALJ concluded that McGrath's impairments did not meet or equal a listed impairment, noting that no treating or examining physician identified findings equivalent in severity to the criteria of any listed impairment, including Listing 1.02 (major dysfunction of a joint).

The ALJ adopted Dr. Ezike's RFC, which she found took into consideration Plaintiff's symptoms insofar as they could "reasonably be accepted as consistent with the objective medical evidence and other evidence." Dr. Ezike found McGrath capable of lifting 20 pounds occasionally and 10 pounds frequently and standing/walking for six hours in an eight-hour workday. Thus, the ALJ determined that the assessed RFC adequately accounted for McGrath's foot pain and related limitations by limiting McGrath to light work.

To reach this determination, the ALJ followed a two-step process: first considering whether the impairments shown by medically acceptable evidence could reasonably produce plaintiff's reported symptoms, and then determining the symptoms' persistence, intensity, and limiting effects. That second inquiry required her to evaluate the Plaintiff's credibility. The ALJ concluded that "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of the

symptoms are not credible to the extent that they are inconsistent with the assessed residual functional capacity assessment."  In doing so, the ALJ explicitly relied on the testimony of Dr. Morales.  She also gave some weight to the assessments of the State agency medical consultants' assessments, but found Dr. Ezike's medical opinion to be more consistent with the record as a whole. Dr. Ezike opinion was based on Morales' treatment records, and did not discount them.

While McGrath's representative and Mrs. McGrath disputed the contents of Dr. Morales' treatment records, claiming that the doctor failed to note claimant's continued foot pain in his records, there was no evidence to corroborate such claims, nor were they able to provide additional evidence to the ALJ.  Mrs. McGrath testified that she believed Dr. Morales continued to report that McGrath was doing well because Morales was over-prescribing Vicodin, which obscured the pain.  However, since pain relief is the very reason the claimant took Vicodin, her testimony may demonstrate the accuracy of Dr. Morales' treatment notes.

Plaintiff attacks the ruling on five points:  first, that the ALJ inappropriately relied on the testimony of the medical expert Dr. Ezike; second, that she failed to explain why he did not satisfy Listing 1.02 (major dysfunction of a joint); third that she failed to review Mr. McGrath under Listings 1.03 (reconstructive surgery of a

major weight-bearing joint with inability to ambulate effectively) and 11.14 (peripheral neuropathies with disorganization of motor function); fourth, that the RFC is inconsistent with the medical record, claiming the only medical doctor whose record discussed work was Dr. Easley; and fifth, that the ALJ should have asked the vocational expert whether McGrath could have performed other jobs.

Finally, McGrath argues that additional evidence submitted to the Appeals Council, after the decision of the ALJ, is basis for remand under sentence six of 42 U.S.C. § 405(g).

The Court considers each issue in turn.

### A. No Inappropriate Reliance Upon Medical Expert

Plaintiff challenges the ALJ's reliance upon the opinion of medical expert Dr. Ezike because he allegedly misunderstood McGrath's diagnosis of CRPS Type II.

When the basis for an expert's opinion is not challenged at the hearing, the ALJ is entitled to rely on the opinion. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)).

The ALJ's account of why she heavily credited the opinion of non-examining medical expert Dr. Ezike was not brief. Instead, she explained that his medical opinion was consistent with the record as a whole, specifically, the treatment notes of Plaintiff's own

physician, Dr. Morales. Dr. Ezike did not dispute any of the conclusions or observations of Dr. Morales. Indeed, although Plaintiff and his wife testified that Plaintiff's pain was much greater than that reflected in Dr. Morales' reports, no one challenged Dr. Ezike's reasoning or expertise at the hearing or in the post-hearing brief.

Plaintiff challenges Dr. Ezike's understanding now, based on the fact that he referred to CRPS Type II as Reflex Sympathetic Pain Syndrome ("RSPS"). Although Defendant has presented credible arguments for why the two are essentially the same, we need not consider this challenge since it was not made at the hearing or in the follow-up brief.

The ALJ appropriately relied on the testimony of medical expert Dr. Ezike.

## B. Explanation of Why Claimant did not Satisfy Listing 1.02 and Review of Claimant under Listings 1.03 and 11.14

Plaintiff claims the ALJ failed to explain why McGrath did not satisfy Listing 1.02, major dysfunction of a joint. Plaintiff also claims the ALJ failed to review McGrath under Listings 1.03 (Reconstructive Surgery of a Major Weight-Bearing Joint with Inability to Ambulate Effectively) and 11.14 (Peripheral Neuropathies with Disorganization).

When evaluating the listings, the ALJ need not consider every piece of evidence, but must "build an accurate and logical bridge from the evidence to the conclusion." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). When an ALJ finds that a claimant fails to satisfy a listing, the ALJ is not required to explain why the claimant did not functionally equal the requirements of the listing. There is no duty to analyze equivalence when the claimant presents no substantial evidence of it. *Eskew v. Astrue*, 2011 U.S. App. LEXIS 24035 (7th Cir. Ill. Dec. 2, 2011). *See, Schneck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The ALJ explained McGrath failed to satisfy any of the listings because "[n]o treating or examining physician has identified findings equivalent in severity to the criteria of any listed impairment, or in particular Listing 1.02 (major dysfunction of a joint)." While Mrs. McGrath's testimony describes large tumors upon McGrath's right leg, this testimony is not corroborated in the medical record before the ALJ, nor did she indicate these tumors caused major joint dysfunction. McGrath's own records and testimony only note severe foot pain, without establishing an inability to ambulate effectively. The mere existence of foot pain does not automatically satisfy Listing 1.02 because, without evidence proving claimant's extremely

limited ability to walk during the period in question, it provides no insight to McGrath's joint functioning. The ALJ is not required to analyze equivalence because McGrath failed to provide substantial evidence proving his condition equals any of the listings.

When there is no evidence that would support the position that claimant meets or equals a listing, the ALJ need not specifically articulate reasons in reference to the listing. *Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004). Here, there is no evidence in the medical records before the ALJ that would support finding a listing under either Listings 1.02 or 1.03, which requires showing an inability to ambulate effectively, or 11.14, which requires showing sensor or motor aphasia resulting in ineffective speech or communication or significant and persistent disorganization of motor function in two extremities.

When claimant fails to raise an argument about meeting a listing or equivalence before the ALJ, they waive this argument. *Fleming v. Astrue*, 2011 U.S. App. LEXIS 23861. *See Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *Shramek* v. Patel, 226 F.3d 809, 811 (7th Cir. 2000). Here, at the hearing before the ALJ, McGrath failed to argue that they satisfied Listings 1.03 or 11.14, despite opportunity to do so. In fact, McGrath's attorney agreed that unless McGrath was able to enter new medical evidence into the record,

McGrath would be unable to prove he was disabled, effectively conceding comparison with other listings.

The ALJ's examination of the listings was appropriate.

### C. The RFC is Consistent with the Medical Record

McGrath argues the ALJ's residual functional capacity evaluation is inconsistent with the medical record. In reviewing such a claim, the district court "is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Moreover, while the ALJ need not consider each piece of evidence, she must "build an accurate and logical bridge from the evidence to [her] conclusion." *McKinzey*, 641 F.3d at 889. The ALJ's omission of a minor aspect of a medical report, in one of many medical assessments, does not indicate a rejection of medical evidence, which would require the ALJ to articulate an explicit reason for not considering this aspect of the report, when the ALJ's RFC reflects the omitted aspect of the medical record. *Dixon v. Barnhart*, 2004 WL 603492 (N.D. Ill. 2004).

Dr. Ezike testified that McGrath was capable of lifting 20 pounds occasionally and 10 pounds frequently and standing/walking for six hours in an eight-hour workday. Dr. Ezike's testimony was based almost entirely off of his evaluation of the medical records of Dr.

Morales. Here, Plaintiff cannot even argue that the ALJ gave insufficient weight to the treating physician's opinion since the RFC adopted by the ALJ was largely derived from the medical records of Plaintiff's own treating physician. Dr. Ezike's testimony, along with Dr. Morales' medical notes, provided the evidentiary foundation for the ALJ's residual functional capacity evaluation. Thus it seems the ALJ built a logical bridge between Dr. Morales' records and the residual functional capacity evaluation, which accounted for McGrath's foot pain and related limitations by limiting McGrath to light work.

There appears to be an inconsistency in the ALJ's ruling. She cites Dr. Morales' May 2003 report, where he notes McGrath's pain medicine "allowed him to work." (R. 43). Similarly, the ALJ cites Dr. Morales in November 2004, who noted that McGrath's pain medicine "allowed him to work and do his work without any problems." (R. 44). However, the ALJ acknowledges at the hearing that Morales' reports were incorrect to the extent that they claimed McGrath was working in 2004. (R. 64). The ALJ also acknowledges that McGrath quit working in 2001. (R. 68). Thus one of the grounds the ALJ cited in favor of her RFC was inconsistent with the evidence. It is not clear that the ALJ's failure to note this flaw in the record destroys the logical bridge between the Morales' medical records and her RFC.

In *Dixon*, the ALJ's omission of a minor notation of pain in connection with a grip test in one of many medical records was insignificant.  It did not indicate a rejection of the medical evidence, and did not require the ALJ to articulate an explicit reason for not considering the notation.  The *Dixon* ALJ's decision made explicit reference to claimant's pain in both the right hand and wrist.  The *Dixon* ALJ also set numerous limitations on the claimant's RFC determination which reflected claimant's limited use of her right hand, demonstrating that ALJ did not ignore medical evidence of claimant's hand pain.

Here, the ALJ's inclusion of one erroneous aspect of the medical records of Dr. Morales' is similarly insignificant.  As in *Dixon*, the ALJ's decision made explicit reference to the fact that claimant returned to work in only 2000 and 2001. (R. 45).  Similarly, the ALJ included numerous limitations on McGrath's RFC determination, which reflected McGrath's limited ability to use his foot by limiting McGrath to light work, "lift ten pounds frequently and twenty pounds occasionally, and sit and stand/walk at least six hours each day." Because the ALJ's RFC rests on alternate grounds that account for McGrath's limited ability to perform work, the omission was insignificant.

The ALJ is to consider limiting effects of claimant's impairments, severe or otherwise, in combination. *Denton v. Astru*e, 596 F.3d 419, 423 (7th Cir. 2010). However, there is no need to consider, in the RFC, speculative limitations derived from conditions the record does not suggest are limiting. *Hoy v. Astrue*, 390 Fed.Appx. 587, 591-593 (7th Cir. Ill. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005).

The ALJ's discussion of McGrath's post-surgery foot pain is dominant in her RFC. She does not consider, in the RFC, limitations that might derive from McGrath's history of chronic obstructive pulmonary disease, hypertension, or migraine headaches and photophobia. There is no need to consider these speculative limitations, because the medical record did not reflect the hypertension or pulmonary disease until after the period of insurance. No medical records reflect the migraine headaches, and the only mention of photophobia is from the 1970s, with no mention of any limiting effects thereafter.

The ALJ's RFC is consistent with the medical record.

### D. Failure to Ask the Vocational Expert Whether McGrath Could Perform Other Jobs and/or Reliance on the Grid

McGrath argues that at step five, the ALJ should have asked the vocational expert whether McGrath could perform other jobs within the national economy. If the ALJ determines the claimant cannot perform

past work, but fails to satisfy a listing, the Secretary has the burden of showing claimant can perform some other job in the national economy. The ALJ may satisfy this burden by applying the Medical-Vocational Guidelines, commonly called the grid. *Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir. 1987). The presence of non-exertional limitations, not factored into the grids, may preclude an ALJ from relying on the grids and require a consultation with a vocation expert, but only when the non-exertional limitations "substantially reduce the range of work an individual can perform." *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). The burden on showing that a non-exertional limitation is not substantial rests on the ALJ. *Lawrence v. Astrue*, 337 Fed.Appx. 579, 584 (7th Cir. 2009).

The ALJ concluded that McGrath was unable to perform any past relevant work, based on his residual functional capacity. After this conclusion, the ALJ had to satisfy the burden of showing McGrath could perform other jobs in the national economy. McGrath's vision problems relating to migraines and photophobia are a non-exertional limitation. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. Ill. 2011); SSR 85-15. Because of the presence of McGrath's non-exertional limitations, the ALJ could only rely on the grids if McGrath's vision problems did not substantially reduce the range of work he could perform. As discussed in the RFC context, it is quite

likely that the vision problems were not substantial in relation to this analysis.  However, the burden of showing that McGrath's non-exertional vision limitations were not substantial rested on the ALJ, and the ALJ laid out no discussion of the effect of McGrath's non-exertional limitations in step five.

In *McKinzey*, the ALJ found that McKinzey required frequent accommodation for her vision problems, but subsequently asserted that this frequent accommodation (the need for extra time to shift focus from near to far sighted vision) would have little or no effect on the light unskilled jobs available, and resorted to the grids.  The court noted that McKinzey's visual impairments were hardly of the type or severity contemplated in the relevant Social Security rulings, which suggested that only impairments severe enough to cause safety concerns would significantly impact the occupational base of light unskilled work.  The court found that no ALJ would reasonably find McKinzey's need for time to shift focus from near to far would "significantly impact" the occupational base for light unskilled work.

Unlike the ALJ in *McKinzey*, McGrath's ALJ failed to provide any justification for her assumption that McGrath's visual non-exertional impairments need not be considered when discerning the presence of available jobs in the national economy.  There is no language

satisfying the burden of showing why this limitation was not substantial.

The ALJ may well have been persuaded that the visual impairment was not substantial, and reliance on the grid was appropriate. Or, alternatively, had the ALJ discarded the grid, the vocational expert may well have demonstrated that sufficient jobs exist that would accommodate both the foot pain and the visual impairment. But the law is clear that whatever determination is reached, it must be demonstrated and supported in the ALJ's opinion.

Instead, as in *Lawrence*, the ALJ pointed to no evidence establishing that McGrath's visual non-exertional limitation was not substantial and rested on assumption. Therefore, the ALJ's reliance on the grids at step five is not supported by substantial evidence.

## E. Additional Evidence is Basis for Remand

McGrath claims that additional evidence submitted to the Appeals Council, after the decision of the ALJ, is basis for remand. Under sentence six of 42 U.S.C. § 405(g), a reviewing court may remand the case to the Secretary when there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in the prior proceeding.

### 1. *Good Cause*

Before the Court considers whether the evidence is new and material, it must decide whether there was good cause for failure to present such evidence earlier. *Anderson v. Bowen*, 868 F.2d 921, 928 (7th Cir. 1989). There is good cause for applicant's failure to introduce medical records when applicant's counsel provides an affidavit reflecting that the unavailability of existing evidence was attributable to forces beyond applicant's control. *Blackburn v. Heckler*, 615 F.Supp. 908 (N.D. Ill. 1985).

McGrath's counsel attempted, but failed, to obtain the additional records prior to the hearing before the ALJ. At the hearing, the ALJ kept the record open for the applicant to obtain McGrath's medical records dating from April 2005 until October 2007. A medical record request was made to Provena St. Joseph Medical Center, where McGrath received his pain management. In July 2010, St. Joseph Medical Center notified applicant that they had no medical records for McGrath from April 2005 through October 2007. This notification arrived long after the deadline for entering new evidence before the ALJ and applicant was unable to supplement the record before the ALJ. Tim McGrath could not obtain these medical records because of the effects of his stroke. In response to St. Joseph Medical Center's notification, applicant's wife, Cynthia McGrath went in person the very next month to St. Joseph and located

the medical records from this period at Pain Centers of Chicago, LLC. This pain management facility was located within Provena St. Joseph Medical Center as a distinct facility.

All pain clinic records on file at the time of the hearing bear the "Provena Saint Joseph Medical Center" heading, while all late-arriving records bear the heading "Pain Clinic of Chicago." Nevertheless, both sets of records still list Dr. Morales as a treating physician and the same address, 333 N. Madison Avenue, Joliet, Illinois. This lends credence to applicant's claim that while the pain clinic maintained its address, the hospital stopped serving as the clinic's record keeper without clearly communicating this to McGrath.

As in *Blackburn*, McGrath's attorney provided an affidavit averring that these circumstances, beyond his control, prevented him from obtaining these records. The good cause requirement is satisfied.

### 2.  *New and Material Evidence*

For purposes of remanding to the Secretary, evidence is new and material when it provides information unavailable at the hearing, when it is not repetitive or cumulative. *Czubala v. Heckler*, 574 F.Supp. 890 (N.D. Ind. 1983). Evidence is material when it is reasonably possible that Secretary's original determination could

change as the result of the new evidence. *Sears v. Bowen*, F.2d 394 (7th Cir. 1988).

McGrath's proffered evidence consists of medical records from Pain Centers of Chicago dating from April 2005 through to 2007. As noted above, because insurance ran out as of December 31, 2006, only those records dated 2006 are relevant. These 2006 records included the reports of Dr. Jiotis, who noted McGrath had left foot pain and throbbing which rated as an 8 out of 10 and was worsened by prolonged walking; Dr. Martini, who noted McGrath had constant left foot pain with throbbing which rated as a 7 out of 10 and was worsened by prolonged standing; Dr. Kao, who noted McGrath had constant left foot pain with throbbing which rated 8 out of 10 and was worsened by prolonged standing; and Dr. Harris, who noted McGrath had constant left foot pain which rated at "10+" out of 10 and was worsened by prolonged standing.

This is new information that was unavailable at the hearing. It is neither repetitive nor cumulative because it provided evidence of new medical records to the ALJ. This information is material because there is a reasonable possibility the Secretary's original determination that applicant was not disabled would change in light of the new evidence, which reports McGrath has constant, intense foot pain which is worsened by prolonged walking or standing. While the

evidence is capable of interpretation, at least some of it is inconsistent with the rosy picture painted by Dr. Morales, and it reflects that the Plaintiff stopped seeing Dr. Morales and changed doctors and medication. This may corroborate the testimony of Plaintiff and his wife given at the hearing and is worth consideration.

The records from the Pain Centers of Chicago dating from April 2005 to December 31, 2006 provide new and material evidence not submitted before the ALJ for good cause. This case is remanded to the Secretary so that he may receive and consider additional evidence.

### IV. CONCLUSION

For the reasons stated herein, the Court finds the Motion to Reverse is not warranted, but that remand is appropriate so that the ALJ may reconsider the RFC in light of the new evidence. If Plaintiff requests one, a new hearing for the specific, limited purpose of hearing arguments and witnesses on the previously unavailable records is ordered. This may include testimony from the treating doctors listed in the new records, but does not include doctors listed in records that were already available at the prior hearing. The ALJ is to reconsider, in light of the new evidence, whether any listings at 20 C.F.R. Part 404, Subpart P, App. 1 are

met, whether the RFC is still applicable, and whether an adequate number of jobs exist in the economy in light of the new evidence.

The decision is also remanded so that, taking the non-exertional limitations into account, the ALJ can determine and bear her burden of demonstrating that reliance on the grids is warranted, or whether testimony from a vocational expert is needed.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 4/10/2012